**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

LUIS VASQUEZ ALVARADO,

      Petitioner,

      v.

TODD BLANCHE, *et al*.,

      Respondents.

Case No. 2:26-cv-01875-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Luis Vasquez Alvarado's First Amended 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus (ECF No. 8). He challenges the lawfulness of his ongoing detention in the custody of Immigration and Customs Enforcement ("ICE"). For the following reasons, the Court grants the Amended Petition and orders Petitioner's immediate release from detention.

## I.      STANDARD OF REVIEW

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty.'"

Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting The Federalist No. 84 (Alexander Hamilton)). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See Carlson, 186 F.2d at 188.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Court makes the following findings of fact based on the undisputed verified allegations in the Amended Petition and the documentary evidence supplied by the Parties. Petitioner is a citizen of Guatemala, who, in 2023, fled his home country after he and his family were threatened by the Barrio 18 gang. See First Am. 28 U.S.C. § 2241 Pet. 5, ECF No. 8 [hereinafter, "Petition"]. Petitioner and his family applied for, received, and reported to the San Ysidro Port of Entry for an appointment date via the CBP One application on August 7, 2023. See id. Petitioner was then

issued and served a Notice to Appear and released on his own recognizance that same day.[1] See id. at 6; Pet'r's Index of Exs., Ex. B, ECF No. 9-2 (August 7, 2023, Notice to Appear) [hereinafter, "NTA"]. Petitioner and his family then settled in the Las Vegas, Nevada area and applied for asylum. See Petition at 6. Petitioner's application remains pending. See Pet'r's Index of Exs., Ex. A, ECF No. 9-1 (Form I-213).

After being arrested by Las Vegas Metropolitan Police Department on May 30, 2026, Petitioner was detained by ICE immediately following his release from the Clark County Detention Center on June 1, 2026. See id. Petitioner requested a custody redetermination (bond) hearing, but this request was denied. See Pet'r's Index of Exs., Ex. C, ECF No. 9-3 (IJ Bond Order). At the June 22, 2026, hearing, the immigration judge ("IJ"), relying upon the NTA issued to Petitioner the day he entered the United States, stated that he lacked jurisdiction to hold a bond hearing for Petitioner because the NTA charged him as an "arriving" noncitizen. See id.; see also Pet'r's Index of Exs., Ex. F at 0:00–5:50, ECF No. 9-6 (Bond Hearing Recording).

Petitioner initiated the instant habeas action immediately after said hearing. See generally Pro Se Pet., ECF No. 1-1. This Court, upon its review of the initializing documents, issued an initial screening order that, inter alia, appointed counsel, ordered document production, and ordered Respondents file a notice indicating whether they contend Petitioner is or is not a member of the Jacobo-Ramirez Class.[2] See generally Screening Order, ECF No. 3. Federal Respondents then filed a notice indicating their position that Petitioner is not a Class member—Petitioner notably did not dispute this in his First Amended Petition and the claims therein. See generally Fed. Resp'ts' Notice Regarding [Jacobo-Ramirez] Class Membership, ECF No. 6 [hereinafter,

---

[1] Despite producing the Cancellation of Form I-220A as to Petitioner, Federal Respondents have not produced the original Form I-220A seemingly issued to Petitioner on August 7, 2023. See Opposition, Ex. A, ECF No. 14-1 (Cancellation of Form I-220A Memorandum). Because the Government does not provide Petitioner's Form I-220A, the Court finds instructive, and takes judicial notice of, ICE's sample Form I-220A, which states: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance[.]" Form I-220A, U.S. Immigration & Customs Enforcement, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf [https://perma.cc/4E47-3DUJ].

[2] See Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026) (setting forth the class definition for the class of noncitizens certified and granted relief to by this Court).

"Notice"]; Petition. After Petitioner filed a First Amended Petition, this Court issued an order to show cause, setting return and traverse deadlines of July 9, 2026, and July 13, 2026, respectively, and ordering Respondents to certify "the true cause of [Petitioner Vasquez Alvarado's] detention" in their return. Order to Show Cause, ECF No. 11 [hereinafter, "OSC"].

When Respondents failed to file any return by the July 9 deadline, Petitioner filed a Notice of Federal Respondents' Non-Opposition, see ECF No. 12, which seemingly prompted the government to file a retroactive motion to extend on Friday, July 10, 2026, at 4:49 P.M. local time. See Fed. Resp'ts' Mot. for Retroactive Extension, ECF No. 13.[3] A few minutes later, Federal Respondents filed a document captioned "Federal Respondents' Supplemental Notice Regarding Class Membership and Responses to Interrogatories Pursuant to Court Order"—a near-replica of their earlier-filed Notice (ECF No. 6), save for two added sentences. See generally ECF No. 14 [hereinafter, "Opposition"]. Petitioner filed a traverse on July 13, 2026. See Pet'r's Order to Show Cause Reply, ECF No. 16 [hereinafter, "Traverse"]. This Order follows.

### III.    STATUTORY SCHEME

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four statutes empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). A non-citizen's place within this web of statutes is significant as it "can affect whether [their] detention is mandatory or discretionary, as well as the kind of review process available to [them] if [they] wish[ ] to" challenge their detention. See id. (citation omitted).

In the instant case, when ordered by this Court to  file "a 'return certifying the true cause of [Petitioner Vasquez Alvarado's] detention' by July 9, 2026," OSC, ECF No. 11 (quoting 28

---

[3] While the Court finds this motion is now moot, the Court notes the request for extension was opposed, see Pet'r's Response to Mot. to Extend, ECF No. 15, and contains troubling misrepresentations. See id. at 4 (identifying inconsistencies in the motion and misrepresentations by the government of its communications with Petitioner's counsel).

U.S.C. § 2243), Federal Respondents filed a document that was (i.) captioned as a "Supplemental Notice Regarding Class Membership" and (ii.) a complete replica—save for a single paragraph added at the end of the document regarding the attached Court-ordered interrogatories—of Federal Respondents' earlier filing "Federal Respondents' Notice Regarding Class Membership" (ECF No. 6). Compare Opposition, ECF No. 14, with Notice, ECF No. 6. As a preliminary matter, this "supplemental notice" can hardly be considered a return to the First Amended Petition, as it does not answer the Court's core inquiry in the Order to Show Cause: which detention authority within the INA do Respondents rely on as justification for Petitioner's detention? Instead, by regurgitating a copy of their earlier notice regarding potential membership in the Jacobo-Ramirez v. Mullin Class, this "return" merely supplies the government's arguments as to why this individual does not fit the Jacobo-Ramirez class definition for relief on that basis—a claim that was not raised by Petitioner in his amended petition. See generally Opposition; see also generally Petition, ECF No. 8. It does not, however, mention any detention authority, besides a single sentence: "Federal Respondents do not waive nor concede their prior litigated positions regarding 8 U.S.C. § 1225(b)(2)(A) and fully incorporate them herein for appellate purposes." Id. at 2.

Respondents are once more reminded of the familiar maxim: "Judges are not like pigs, hunting for truffles[.]" Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)). The government must provide specific justification for its detention of Petitioner and not leave the Court to guess or speculate from its general arguments. While the Court has permitted Respondents to incorporate by reference legal arguments from prior submissions, they must still make their arguments as to each petitioner in each habeas case explicit. It is incumbent upon the government to provide legal and factual justification for their actions in detaining noncitizens, like Petitioner.

While the government's failure to substantively respond could alone warrant a ruling in favor of Petitioner,[4] the Court finds a ruling on the merits is necessary to avoid the possibility of Federal Respondents applying their unlawful interpretation of 8 U.S.C. § 1225(b)(2)(A) to

---

[4] Cf. Local Rule 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, exception a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").

Petitioner in the future. Because Petitioner raises a verified allegation that he is being detained pursuant to an illegal application of 8 U.S.C. § 1225(b)(2)(A), and Federal Respondents make no mention of any other provision, the Court finds the sole inquiry in this matter is whether the government can lawfully detain Petitioner under this provision of the INA. In short, they may not.

### A. Section 1225(b)

The INA imposes mandatory detention of certain noncitizens seeking to enter the country under 8 U.S.C. § 1225(b). See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). While "§ 1226 applies to [noncitizens] *already present* in the United States," the INA "authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2)." Id. at 303 (emphasis added). Section 1226's detention scheme serves as the "default rule" governing the "process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," while § 1225(b) has been characterized by the Ninth Circuit as "supplement[ing] § 1226's detention scheme." Id. at 288; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022).

Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1) (emphasis added). For certain "applicants for admission," § 1225 authorizes "expedited removal." § 1225(b)(1). Specifically, "Section 1225(b)(1) applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," as well as "certain other [noncitizens] designated by the Attorney General." Jennings, 583 U.S. at 287 (citing §§ 1225(b)(1)(A)(i), (iii)). Individuals that fall into § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless claiming asylum or a fear of persecution. Id. (first quoting § 1225(b)(1)(A)(i), then citing § 1225(b)(1)(A)(ii)). "All other applicants for admission are covered by § 1225(b)(2), which 'serves as a catchall provision,' and which mandates detention 'if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted.'" Id. (first citing Jennings, 583 U.S. at 287, then quoting U.S.C. § 1225(b)(2)(A)).

Although § 1225(b) generally mandates detention, applicants for admission detained under

§§ 1225(b)(1) and (b)(2)(A) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jennings, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5). "Such parole, however, 'shall not be regarded as an admission of the [noncitizen].'" Id. (quoting 8 U.S.C. § 1182(d)(5)(A)). However, this form of parole is distinct from the conditional parole granted to noncitizens who are released on personal recognizance soon after entering the country under the authority of § 1226(a). See 8 U.S.C. § 1226(a)(2)(B); see also Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that the noncitizen was "conditionally paroled under the authority of § 1226(a)" when the government released him on his own recognizance soon after he entered the country); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 747 (BIA 2023) ("The [noncitizens] were detained for a few days after their initial apprehension and then released on their own recognizance pursuant to DHS' conditional parole authority under section 236(a)(2)(B) of the [INA], 8 U.S.C. § 1226(a)(2)(B).").

**B. Applicability of Section 1225(b)(2)(A)**

This Court is well acquainted with Respondents' newfound interpretation and application of the INA, specifically in regards to § 1225(b)(2)(A), as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). While Petitioner is not a member of the Jacobo-Ramirez Class,[5] the same legal reasoning and statutory interpretation set forth in Jacobo-Ramirez applies to this case. The Court finds, consistent with its prior rulings noted above and which are incorporated by reference, that Section 1226 and not Section 1225 applies to noncitizens like Petitioner who are arrested or detained in the interior of the United States. Id.; see also Rodriguez Diaz, 53 F.4th at 1197. This Court has repeatedly reached this same conclusion in near-

---

[5] Jacobo-Ramirez defines class members as "noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States." Jacobo-Ramirez v. Mullin, 2026 WL 879799, at *33. The Court finds Petitioner meets criteria except for prong (3).

identical cases:

> Like class members, Petitioner is not subject to mandatory detention, including due to criminal history. He entered the U.S. and lived in the interior for years before his arrest and detention by ICE. Like class members, he is being held as though he were an "applicant seeking admission" and has been deprived of an individualized bond hearing on that basis. And Respondents do not argue why Petitioner's [cancelled OREC] indicates he should be treated any differently than the members of the class. Instead, Respondents merely reiterate their same stance in the ongoing Jacobo Ramirez litigation.

Garcia Garcia v. Blanche, No. 2:26-cv-01502-MMD-DJA, 2026 WL 1911690, at *4 (D. Nev. July 2, 2026); see also Gonzalez-Diaz v. Blanche, No. 2:26-cv-00413-APG-BNW, 2026 WL 931572, at *3 (D. Nev. Apr. 6, 2026) (reaching the same conclusion as this Court regarding a noncitizen who was released on his own recognizance after being detained by immigration authorities near the border in 2022, *i.e.*, the same circumstances and timeline as Mr. Alvarado) ("I have previously rejected the government's position, and I do so again here. . . . § 1225(b)(2)(A) governs only inspections at the United States' international borders and thus cannot justify the detention of a noncitizen, like Gonzalez-Diaz, who was detained within the country.").

Thus, contrary to the sole basis for detention stated by Respondents, Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Therefore, his continued detention under this provision is unlawful.

## IV.    REMEDY

Based on the record before it, the Court finds that Petitioner is subject to erroneous, prolonged detention. Petitioner requests relief in the form of immediate release to remedy this. Because Respondents have failed to identify any lawful authority that permits Petitioner's continued detention, the Court finds immediate relief is the appropriate remedy. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); Preiser v. Rodriguez, 411 U.S. 475, 498 (1973) (stating that immediate or speedier release from incarceration is "the heart of habeas corpus). This remedy is bolstered by the fact that an immigration officer previously determined it was proper to release him on his own recognizance in 2023. See Petition at 6, ECF

No. 8. However, because of Petitioner's pending criminal charges, the Court will permit ICE to impose an Order of Supervision with reasonable conditions upon Petitioner's release.

**V.    CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's Amended Petition for a Writ of Habeas Corpus (ECF No. 8) is **GRANTED.**

**IT IS FURTHER ORDERED** Federal Respondents' Retroactive Motion to Extend Time (ECF No. 13) is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON PERSONAL RECOGNIZANCE on July 27, 2026,** between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioner—or their designee and/or agent—will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents may impose reasonable conditions on Petitioner's release in an Order of Supervision, except that they are **PROHIBITED** from imposing electronic monitoring, a curfew, or a similar restriction on Petitioner's liberty, without having first established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If ICE or DHS impose release conditions in violation of this Order, the Court will consider contempt sanctions against all individuals responsible for the imposition of such conditions.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **July 28, 2026,** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning

release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment and close this case accordingly. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** July 24, 2026.

_____
**RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE**